The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Willis and upon the briefs of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
Prior to the hearing before Deputy Commissioner Willis, an Order was entered by Deputy Commissioner W. Joey Barnes, dated 30 January 1995; and at the hearing the parties submitted a Pre-Trial Agreement, dated 26 April 1995. These documents, with their stipulations, are incorporated by reference as though fully restated herein.
Following the hearing, the record remained open to allow the parties to produce additional evidence. Since that time the parties have submitted the depositions of Dr. Winston Payne and Alan Clay Evans (co-worker of plaintiff, plaintiff and her husband and two representatives of the employer were present at Mr. Evans' deposition); and the parties have submitted a series of medical records, marked as Stipulated Exhibit No. 2, and plaintiff's timesheets, marked as Stipulated Exhibit No. 3. In addition to the evidence accepted at the hearing, these documents are hereby made a part of the record of this case; and regarding the depositions, all objections raised by counsel are hereby OVERRULED.
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 43 years old, having been born on 17 December 1951. Plaintiff left school in the eleventh grade, later earned her G.E.D., and went to a technical college for one and one-half years. Plaintiff's medical history included kidney problems. Plaintiff worked for defendant from 1974 to 1986, with her last three years spent as a grounds keeper. She returned to work for defendant in 1989 and stayed for about five additional years. Plaintiff has not worked for defendant or any other employer since 5 July 1994. Her average weekly wage was $414.81, yielding a compensation rate of $276.54 per week.
2. On 31 December 1993, New Year's Eve, plaintiff worked third shift, which would continue until 7:00 a.m. on 1 January 1994. During the night plaintiff and her co-workers, including a supervisor, consumed a limited amount of alcohol. Plaintiff brought alcohol with her to the plant, but she did not become intoxicated and was not impaired in her ability to do her job.
3. Sometime after 6:00 a.m., shortly before the first shift began, plaintiff was removing fiber from a machine before it was restarted. While removing the fibers, formic and acetic acid splashed into both plaintiff's eyes. Plaintiff and a co-worker, Alan Evans, rushed to a sink where plaintiff flushed her eyes and washed her face. There was a small black piece of carbon in plaintiff's left eye which she removed with a Q-tip. Plaintiff put Visine in her eyes and went to her supervisor to report the incident. The supervisor asked plaintiff if she needed to go to the emergency room, and the co-worker offered to drive plaintiff home. Plaintiff said she would be fine, and she drove home alone. This incident was an interruption of her regular work routine by unusual circumstances likely to result in unexpected consequences.
4. When plaintiff arrived home, her eyes continued to burn. At 10:40 a.m., about four hours after the incident, plaintiff went to the emergency room at Mission Memorial Hospital. She was diagnosed as having a corneal burn and a conjunctival (the white part of the eye) laceration of the left eye. There was no diagnosis of corneal burn or abrasions to the right eye although there was an observation that the right eye was red and inflamed as well. Plaintiff was photophobic, unable to tolerate bright light. The doctor gave plaintiff medication and a double patch for the left eye.
5. The day after the incident plaintiff returned to work at her regular job; and she worked through 6 January 1994, missing no time from work. Prior to the incident on 1 January 1994 plaintiff had been scheduled for a hysterectomy. Plaintiff left work on 7 January 1994 for the hysterectomy. The surgery was performed and plaintiff was out of work from 7 January 1994 through about 30 March 1994.
6. Plaintiff sought no medical treatment for her eyes between 1 January 1994 and 9 March 1994, about two months. On 9 March 1994 (while she was still out of work for her hysterectomy) plaintiff went to her family doctor with a complaint of swollen and irritated eyes, which she said she had experienced for the past three days. The doctor prescribed an antibiotic for plaintiff's eyes. Five days later, on 16 March 1994, the condition of plaintiff's eyes had become worse. The doctor told plaintiff to discontinue the antibiotics and to use artificial tears.
7. On 18 March 1994 plaintiff's family doctor referred her to Dr. Winston Payne, an ophthalmologist. At Dr. Payne's first evaluation plaintiff reported a two-week history of her eyes being itchy, red and puffy, which she related to the acid incident of 1 January 1994. At this time Dr. Payne diagnosed an infection and an allergic reaction to the antibiotic which plaintiff had been taking for her eyes as a result of the acid spill. Later, following the repeated episodes of irritation, he causally related her condition to the acid spill.
8. On 30 March 1994, about two weeks after treatment by Dr. Payne, plaintiff returned to work. This was her first return to work after her hysterectomy in January 1994. Between 30 March 1994 and 29 May 1994 (about two months), plaintiff took vacation or sick leave for eleven days and parts of three days. Plaintiff returned to Dr. Payne on 1 June 1994 with a flare-up of her eye condition. Dr. Payne excused plaintiff from work for five days. Plaintiff returned to Dr. Payne on 10 June 1994 and reported that her condition was much better. Dr. Payne excused plaintiff from work for another week due to fumes in defendant's plant, which bothered her eyes.
9. Plaintiff returned to work on about 22 June 1994. Plaintiff remained at work through 4 July 1994, taking vacation or sick days for two days and parts of one day. Plaintiff asked to be assigned to a different department which would not expose her to any fumes. Defendant offered a job in the "Phase Seven" which would not expose her to any fumes. However, the job would require plaintiff to lift up to thirty-five pounds. Plaintiff told defendant that she could not lift this amount of weight because of her kidney problems. It had not been necessary for her to report any lifting restrictions before this job offer because her seniority had permitted her to avoid jobs involving lifting.
10. Plaintiff has not worked for any employer since 5 July 1994. Plaintiff testified that she had sought other employment but had not been able to find any. On 27 October 1994 plaintiff's employment with defendant was officially terminated. Plaintiff was paid a severance package upon her termination.
11. On 6 July 1994, the day after she stopped working, plaintiff returned to Dr. Payne; and Dr. Payne recommended that she change departments in defendant's plant. On 27 July 1994, about three weeks after she stopped working, plaintiff called Dr. Payne to report that mowing her grass had caused a flare-up of her eye condition. On 24 August 1994, about seven weeks after she stopped working, plaintiff returned to Dr. Payne and reported that putting up corn and cleaning her stove had caused another flare-up of her eye condition. Plaintiff received no medical treatment for about three months.
12. The last examination by Dr. Payne was on 5 December 1994, twenty-two weeks after plaintiff stopped working for defendant. At this time plaintiff reported her eyes were swollen and attributed the condition to lint on her curtains. At this time plaintiff's vision was 20/40 in both eyes, and there was a scaling appearance to the skin of her upper and lower eyelids. Dr. Payne again prescribed Valisone cream.
13. The incident of 1 January 1994 caused plaintiff to experience episodes of severe eye irritation which in turn caused plaintiff's periodic inability to return to work for defendant-employer.
14. For the reasons stated above, the Full Commission finds that there is sufficient evidence of record from which the Full Commission can find from its greater weight that plaintiff was unable to earn wages periodically after 6 January 1994 due to the incident of 1 January 1994, and the Full Commission so finds.
15. For the reasons stated above, the Full Commission finds that there is sufficient evidence of record from which the Full Commission can find from its greater weight that the medical treatment plaintiff received for conjunctivitis, contact dermatitis and other problems with her eyes from 9 March 1994 and continuing was made necessary as a result of the incident of 1 January 1994, and the Full Commission so finds.
16. It is unknown at this time whether, as a result of the incident of 1 January 1994, plaintiff retains any permanent partial impairment.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 1 January 1994 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C.G.S. § 97-2 (6).
2. As a result of the injury by accident of 1 January 1994, plaintiff missed seven or more days from work; and therefore, plaintiff is entitled to temporary total disability compensation at the rate of $276.54 per week for each week she was or is disabled as a result of such compensable injury. N.C.G.S. § 97-28
and § 97-29.
3. As a result of the accident of 1 January 1994, plaintiff is entitled to all reasonable medical expenses incurred, or to be incurred, as a result of said accident.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay temporary total disability to plaintiff at the rate of $276.54 per week for the period 2 January 1994 through 10 January 1994, and for the period from 5 June 1994 to the present and until she finds employment or pending further orders of the Commission. Defendants shall be given credit for any disability payments to plaintiff during any of these periods based on an employer-sponsored plan for which plaintiff made no contributing payments. Such temporary total disability shall be subject to the attorneys fees hereafter allowed.
2. Such compensation that has already accrued shall be paid in one lump sum, with interest thereon at the rate of 8 per cent per annum from 16 August 1995 until paid, subject to an attorneys fee of 25% of the compensation, excluding interest, which shall be payable directly to plaintiff's attorney. Thereafter, plaintiff's attorney shall receive every fourth weekly check.
3. Defendants shall pay all medical expenses incurred, or to be incurred, as a result of the injury by accident of 1 January 1994.
4. Defendants shall pay the costs, including an expert witness fee in the amount of $200.00 to Dr. Payne.
 S/ _________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________ COY M. VANCE COMMISSIONER
S/ _____________________ DIANNE C. SELLERS COMMISSIONER